**HESS–BRIGHT MFG. CO. v. BEARINGS CO. OF PENNSYLVANIA et al.**

(District Court, E. D. Pennsylvania. March 10, 1921.)

No. 1799.

Patents ⬡➞328—822,723, for ball bearings, not infringed.

The Conrad patent, No. 822,723, for improvement in ball bearings, *held* not anticipated and valid, but not infringed by the regrinding of the grooves of old bearings, and, where required, substituting new balls to fit the grooves enlarged by the regrinding, which is within the right to make repairs.

In Equity. Suit by the Hess-Bright Manufacturing Company against the Bearings Company of Pennsylvania and Herman P. Schade. Decree for defendants.

⬡➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rogers, Kennedy & Campbell, of New York City, for plaintiff.

J. Bonsall Taylor and E. H. Fairbanks, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This case concerns patent No. 822,-723, issued June 5, 1906, to Robert Conrad, for an improvement in ball bearings. The prayers are the usual ones, and the defenses the like usual ones of a denial of validity and of infringement. We will, so far as concerns this court, dispose of the issues raised in the order named.

Respecting the question of validity of the letters patent, we have for our guidance, in addition to adjudications in other circuits, rulings by the courts of this circuit, not once or twice, but thrice, establishing validity. These cases are found reported in Hess-Bright Mfg. Co. v. Standard Roller-Bearing Co. (C. C.) 177 Fed. 435, Same v. Fichtell (D. C.) 209 Fed. 867, and Id., 219 Fed. 723, 135 C. C. A. 421. The justification for a renewed attack upon this patent is that counsel for defendant confidently rely upon the German patent, No. 49,071, as an anticipation. In none of the other litigation was this German patent in evidence. In view of the fact, however, that its existence was called to the attention of the Circuit Court of Appeals on a motion for a reargument, although perhaps for a different purpose than the use now made of it, we do not feel at liberty to reinquire into the subject of validity and, in consequence make a formal finding of validity on the authority of the cited cases.

This leaves for consideration only the question of infringement. The discussion of the second branch of the defense has been made very interesting because of the notable ability displayed in the argument. The subject-matter of this invention plays an important part in industrial activities. This patent is in capable and strong hands. The showing made of commercial recognition of the utility of the invention shows in turn the control which plaintiff has of the trade.

In the view of the defendant they seek now to extend this control over the making of all repairs to worn bearings, or to force the sale of a new bearing, by denying the right of the owner to repair an old one. The monopoly which the law has granted to the plaintiff has proven itself to be one of great value. The law gave the exclusive right to make and vend, but, when once a sale was made, the right (so far as concerned the bearing sold) had been exhausted by its exercise, and all right of ownership passed by the sale, as fully as if no patent had ever issued, except that the vendee had no more right than before to make, use, or sell another bearing like it. The vendee had the right to its full, untrammelled use, and the right to keep it in repair fitted to use. This included, also, the right to have repairs made by others. The control of this right of repair is sought by plaintiff more for the purpose of asserting control of the trade than for the direct gain from the repairs made. The motive avowed is to protect the reputation of the patented bearings, which the performances of a repaired bearing might injure.

Counsel for plaintiff does not, of course, formulate the claim of right as defendant states it. He does not deny to the vendee of plaintiff the

right to repair. What he does deny is any right, by using plaintiff's bearing as a model, to make a new bearing from the raw material of an old one. It is obvious that all this is nothing more than opposing statements of the effect of what the defendant has done. The defendant calls it the repair of old bearings. The plaintiff calls it new construction or reconstruction. Omitting the name properly to be applied to what was done, the fact finding is made that what was done was the regrinding of the grooves of old bearings, and, where required, the substitution of new balls to fit the grooves enlarged by the regrinding.

The dividing line between repairs and a making over cannot be verbally located. What has been done can with more or less confidence be pronounced to be one or the other, but neither the one nor the other can be defined. The judgment pronounced must in consequence partake of the ipse dixit or rescript character. A further consequence is that the adjudged cases provide us with little for our guidance. With no thought of finding a better mode of expression for the clearly presented views of counsel for plaintiff, it may be premised that a feature of the patented bearing is the metallic pathway provided in the form of a groove, which calls for the use of balls of a certain size. The nicety of adjustment required can be most emphatically expressed by the statement that the unit of measurement employed is the ten-thousandth part of an inch. This groove may, from use or abuse, be in need of being remade by regrinding. The lightest repolishing, almost, is such.

The argument that this is not repair, but a new construction, may be thus expressed: A bearing with a groove of a certain depth, with balls exactly fitting it, is sold by the plaintiff to A. Another bearing, with a different groove, calling for the next larger sized balls, is sold to B. The first vendee smooths up the groove in his bearing, thus adapting it to the next larger size of balls. By so doing he has not repaired the bearing sold to him, but out of the material in this old bearing he has made a new one, which is not his old bearing, but a different bearing of the B. type. In other words, the old A. bearing has lost its identity by destruction, and a new bearing, B., has been made. In a sense this is, of course, true; but it is only true in a sense. Identity is not lost by a mere change in size. The rule of which we are in search is a practical rule, for the guidance of practical men in practical business. What the patentee sells is a concrete thing. It is a bearing. As long as it remains the bearing of the patent, it is what the patentee sold. The moment it becomes something else, the patentee is not concerned with it. The groove of the patent is still the groove of the patent, although enlarged. It no more loses its identity by enlargement than a river does by the change of volume, due to the flow and ebb of the tide, or by the shoaling or deepening of its channel by the wash of its current.

The balls are no part of the groove, but something used with it. There is no thought of denying the right of a vendee to replace balls. His right is not limited to any size of ball. The balls may be replaced without thought of infringement of any patent right. To deny vendee the right to smooth up a groove is to deny him all right to make repairs

to the patented features of what was sold to him. The right cannot be limited to the use of the same balls as before. The only limitation is that he may repair, but cannot make a new bearing out of the material of the old. What is the one and what the other the facts of each case must determine. The line, as before observed, is most difficult to draw in words of description; it is by no means so difficult to draw in fact.

In the instant case our fact finding is that what defendant has done is to make repairs, and that it has not infringed upon the patent rights of plaintiff. The name given to anything is not necessarily indicative of what the thing is. A fact upon which defendant lays much stress has some interest as a coincidence, but no other value. The fact referred to is that the plaintiff itself did what the defendant has done, and the department in charge of such work was called by plaintiff its "Repair Department." We attach as little importance to the distinction between repairing and selling secondhand bearings after they have been repaired.

The cases on the subject of repairs and reconstruction have been fully and almost completely listed by counsel. We have carefully considered the cases to which we have been referred. We find none of them to conflict with the finding made. Among those cited are Wilson v. Simpson, 50 U. S. (9 How.) 109, 13 L. Ed. 66; American v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52, 27 L. Ed. 79; Morgan v. Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500; Leeds v. Victor, 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816; Davis Co. v. Edison, 60 Fed. 276, 8 C. C. A. 615; Goodyear v. Jackson, 112 Fed. 146, 50 C. C. A. 159, 55 L. R. A. 692; Keeler v. Standard, 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848; Bauer v. O'Donnell, 229 U. S. 18, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150.

The plaintiff's bill is dismissed, with costs, for want of equity.